IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KYLE McLINN; and
OUTLAW TOWING & RECOVERY INC.,

Plaintiffs,

v.                                                                          Case No. 20-2385-JWB

THOMAS COUNTY SHERIFF'S DEPARTMENT;
JOEL THOMAS NICKOLS, JR., *Individually and
in his capacity as Thomas County Sheriff*;
JACOB COX, *Individually and in his capacity as
Deputy Thomas County Sheriff*;
FIRST STATE BANK OF HEALY, *also known
as First State Bank of Healey*;
TRAVIS RYBURN; TRIPLE T TOWING; and
THOMAS COUNTY, KANSAS, BOARD OF
COMMISSIONERS,

Defendants.

## MEMORANDUM AND ORDER

This matter comes before the court on motions to dismiss by the Thomas County Defendants[1] (Doc. 50), Travis Ryburn and Triple T Towing (Doc. 46), and First State Bank of Healy ("FSB") (Doc. 52), as well as on Plaintiffs' motions for a hearing (Doc. 71) and for leave to file a surreply (Doc. 77.)  The motions are fully briefed and the court is prepared to rule.  (Docs. 47, 51, 58, 66, 72, 73, 75, 78, 79.)  For the reasons stated herein, Plaintiffs' motions for a hearing and to file a surreply are DENIED; the motion to dismiss of FSB is DENIED without prejudice to

---

[1] Jacob Cox (hereinafter "Cox"), Joel Thomas Nickols, Jr. ("Nickols"), the Thomas County Sheriff's Department, and the Thomas County Board of Commissioners ("Commissioners").  (See Doc. 35.)  The Board of Commissioners is not actually listed as a defendant in the motion (Doc. 50), although the court presumes based on prior filings and the arguments raised in the instant motion that this is due to an oversight. (*See* Doc. 35.)

refiling;[2] and the motions to dismiss of the Thomas County Defendants (Doc. 50), Ryburn and Triple T Towing (Doc. 46) are GRANTED IN PART and DENIED IN PART.

## I. Preliminary Matters

A. <u>Materials outside the pleadings</u>.  The claims in this case arise from the allegedly unlawful repossession of Plaintiffs' vehicle on August 10, 2018.  The Thomas County Defendants' motion to dismiss relies in part on a video (with audio) recording of the incident captured by Deputy Cox's law enforcement body camera ("body cam").  Defendants argue the court should consider the body cam video because it is referenced in and relied on by Plaintiffs in the amended complaint.  (Doc. 51 at 2-3.)  In response, Plaintiffs "do not object" to the court's consideration of the video, but only to the extent it does not conflict with the amended complaint, and they argue that a number of factual inferences arise from the video.  (Doc. 73 at 4-8.)  Defendants dispute those inferences, arguing in reply that the "video speaks for itself, and completely contradicts" Plaintiffs' allegations of (among other things) a threatening encounter.  (Doc. 75 at 2.)

Courts considering videos attached to dispositive motions usually do so at the summary judgment stage.  *Estate of Holmes by and through Couser v. Summers,* 387 F. Supp. 3d 1233, 1243-44 (D. Kan. 2019).  Given that summary judgment motions are designed to evaluate and consider whether there is evidence to support the allegations in the complaint, that is hardly surprising.  After considering the particular arguments made by the parties, and the nature of the video, the court declines to consider the video in connection with the Thomas County Defendants' motion to dismiss the amended complaint under Rule 12(b)(6).  Although the court has discretion to consider materials outside the pleadings on a motion to dismiss (*see Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998)), in this case additional evidence or testimony may be

---

[2] A notice of settlement of the claims against FSB was filed after FSB filed its motion to dismiss.  (Doc. 70.)  The notice indicates the parties will seek dismissal of these claims pursuant to the settlement.

necessary to establish whether the video shows all of the relevant events, and to explain events depicted in the video.  Under the circumstances, the court will limit its consideration to the allegations in the amended complaint.

B. <u>Motion for leave to file surreply</u>.  (Doc. 77.)  Plaintiffs ask to file a surreply to address what they characterize as several new issues raised by the Thomas County Defendants in their reply.  (Doc. 77 at 1.)  Surreplies "are permitted only with leave of court and under 'rare circumstances' after good cause is shown." *James v. Boyd Gaming Corp.*, No. 19-2260-DDC-JPO, 2021 WL 794899, at *5 (D. Kan. Mar. 2, 2021) (citations omitted).  Much of Plaintiffs' proposed surreply deals with inferences from the body cam video.  (Doc. 77-1 at 1-2.)  Given that the court has excluded the video from consideration, this provides no basis for a surreply.  Plaintiffs also seek to make additional legal arguments about breaches of the peace, qualified immunity, and the requirements of the Kansas Tort Claims Act, but they fail to show these are necessary responses to new issues, as opposed to attempts to have the last word on issues raised by the motion to dismiss.  (*Id.* at 3-5.) Finally, Plaintiffs want to respond to what they say is Defendants' "unwarranted Rule 11 accusation," but the surreply fails to address the substance of the underlying issue. *See* (Doc. 73 at 4) (Plaintiffs asserting that Defendants produced the body cam footage "but deliberately produced no other relevant evidence….")  In any event, Defendants have asserted no Rule 11 motion, so a surreply on that issue is unnecessary.  The motion for leave to file a surreply (Doc. 77) is therefore denied.

C. <u>Motion for hearing</u>.  (Doc. 71.)  Plaintiffs seek oral argument on the motions to dismiss because "further explanation and arguments regarding certain actions … in the [body cam] footage would  be  beneficial…."   (Doc. 71 at 1.)   Again, the court has excluded the video from consideration, so argument is not merited on that point.  Moreover, the court determines that oral

argument would not assist in deciding the issues presented.  *See* D. Kan. R. 7.2 (court may allow oral argument); *Carter v. Spirit Aerosystems, Inc.,* 827 F. App'x 864, 870 (10th Cir. 2020) (denial of oral argument reviewed for abuse of discretion).

## II.  Facts

The following allegations are taken from the amended complaint (Doc. 45) and are assumed to be true for purposes of deciding the motions to dismiss.

Plaintiff McLinn is a resident of Oakley, Kansas.  He is the sole shareholder and director of Outlaw Towing & Recovery, Inc. ("Outlaw Towing").  Defendant Cox is a deputy sheriff for Thomas County.  Defendant Nickols is the Thomas County Sheriff.  Defendant Triple T Towing ("Triple T") is a tow company located in Oakley and is operated by Defendant Ryburn.  (Doc. 45 at 1-4.)

In February 2017, Plaintiffs purchased a 2006 Ford F350 ("the F350") with a loan from First State Bank of Healy, Kansas ("FSB").  The F350 was collateral for the loan.  Payments on the loan were due the third day of each month, and late charges became due if payments were ten or more days late.  (*Id.* at 6.)  Plaintiffs' payment "made in July 2018 was dishonored."  (*Id.*)

On August 10, 2018, sometime before 9 a.m., Ryburn/Triple T, acting under the direction of FSB, arrived on Plaintiff McLinn's property to repossess the F350.  (*Id.*)  Ryburn/Triple T were Plaintiffs' direct competitors.  No notice of any kind was sent by FSB, nor did it obtain any court order to authorize the repossession.  The F350 was parked on land rented by McLinn and Outlaw Towing, about a tenth of a mile from the nearest entrance to the property.  (*Id.* at 7.)  Deputy Cox arrived at the same time as Ryburn/Triple T.  Greg Jirak, a Trooper with the Kansas Highway Patrol, also arrived at that time and remained by the highway near Plaintiffs' property.  The officers

4

arrived because Triple T/Ryburn had requested law enforcement presence to facilitate the repossession. (*Id.* at 7-9.)

McLinn, who was inside the building on the premises, heard some noise and came outside to investigate. Cox was near the door. McLinn informed Cox that Triple T/Ryburn had been told they were not to come on McLinn's property and that they were not welcome on the property. McLinn demanded that Triple T/Ryburn and Cox leave the F350 alone and leave the property. Cox nonetheless instructed McLinn not to resist and to allow the repossession to happen. McLinn became agitated and yelled to demand that they leave the vehicle alone and leave the property. At more than one point, Cox put his hand on his gun. (*Id.* at 11.) When McLinn asked Cox the identity and purpose of the Highway Patrol Trooper, Cox informed him it was Greg Jirak and that he was there as "backup." (*Id.* at 8.)

McLinn attempted to retrieve his personal items from the F350. Cox imposed himself between McLinn and the F350 and put his hand on his gun. Cox stood close to McLinn throughout the encounter. When it became clear to McLinn that he could not stop the tow, he attempted to go back inside to get dressed. Cox stopped him and demanded that McLinn confirm he was not going back inside to get a weapon. (*Id.* at 12-13.)

McLinn was not given any paperwork justifying the repossession. He continued to protest and demand that they leave, but Cox ignored his protests. The tow was completed and the F350 was removed from the property. Cox remained until the repossession was complete. (*Id.* at 13.)

According to the amended complaint, the towing insurance of Triple T/Ryburn had been canceled as of June 30, 2018, and was not effective again until June 30, 2019, such that Triple T/Ryburn was uninsured on August 10, 2018. (*Id.* at 14.)

When McLinn first called the Thomas County Sheriff's Office after the incident to complain about the repossession, Sheriff Nickols allegedly laughed and said he saw nothing wrong with what was done. (*Id.* at 15.)

On the same day the F350 was repossessed, the Thomas County Sheriff's Office represented to the Thomas County Attorney that Cox had been in possession of a court order allowing the repossession. The Thomas County Attorney took the position with McLinn that nothing wrong had been done because Cox was enforcing a valid court order in repossessing the F350. (*Id.* at 15-16.)

The amended complaint alleges that over the course of the last two years, McLinn "has repeatedly attempted to make and file a written complaint about the violation of his rights," including "speaking directly with Nickols [and] the County Attorney," but "his requests were denied." (*Id.* at 16.)

The amended complaint also alleges that McLinn was "threatened with legal action for his repeated and detailed complaints to the Thomas County Attorney, Nickols," and others. (*Id.* at 17.) In McLinn's calls to the Sheriff's Department, Nickols allegedly told him that if he continued to complain about the violation of his rights, they would charge him with harassment and threatened to arrest him for phone harassment. (*Id.* at 17, 22, 24)

The amended complaint contains the following claims, which, except as otherwise noted, are asserted against all Defendants. Count I asserts claims under 42 U.S.C. § 1983 for the deprivation of First, Fourth, and Fourteenth Amendment rights under color of state law. Count II alleges a state law trespass claim. Count III alleges a state law conversion claim. Count IV alleges improper repossession under the Kansas Uniform Commercial Code (UCC). Count V asserts

breach of contract against FSB "and to any extent relevant, its agents." (Doc. 45 at 31.) Count VI asserts a state law claim for intentional infliction of emotional distress.

The defenses raised by Defendants in their motions to dismiss include failure to state a claim under Rule 12(b)(6), qualified immunity, and failure to satisfy the Kansas "notice of claim" statute, K.S.A. 12-105b(d).

## III. Standards

A. <u>Rule 12(b)(6)</u>.  In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). As the Tenth Circuit observed:

> Determining whether a complaint contains enough well-pleaded facts sufficient to state a claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. The court must determine whether the plaintiff has pleaded enough facts to state a claim for relief that is plausible on its face, not just conceivable. Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citations and internal quotation marks omitted.)

B. <u>Qualified Immunity</u>.  "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir.

2013). Qualified immunity "shields public officials...from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and … (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "It is not enough that the rule is suggested by then-existing precedent." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). The rule at issue "must be 'settled law'" dictated by controlling authority or a "robust 'consensus of cases of persuasive authority.'" *Id*. at 589-90 (citation omitted). This does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft*, 563 U.S. at 741 (2011)). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590. Moreover, the standard requires "that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id*.

C. <u>Kansas notice of claim requirement</u>. Section 12-105b(d) provides in part that any person having a claim against a municipality which could give rise to a claim under the Kansas Tort Claims Act (KTCA) "shall file a written notice as provided in this subsection before commencing

such action." *Id.* The notice "shall be filed with the clerk or governing body of the municipality" and must contain specified information, including the factual basis of the claim, the name of any public officer involved, a statement of the injury sustained, and a statement of the amount of monetary damages requested. *Id.* "In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim." *Id.* Once the notice is filed, "no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first." *Id.*

Kansas considers compliance with this provision jurisdictional in nature. "If the statutory requirements are not met, the court cannot acquire jurisdiction over the municipality." *Myers v. Bd. of Cty. Com'rs of Jackson Cty.,* 280 Kan. 869, 877, 127 P.3d 319, 325 (2006). *See also Whaley v. Sharp*, 301 Kan. 192, 197, 343 P.3d 63, 67 (2014) ("Compliance with ... 12-105b(d) is required before a court has subject matter jurisdiction over a tort claim against a municipality.")

## IV. Analysis

### A. <u>Thomas County Defendants</u>

1. <u>Count I – Fourth & Fourteenth amendment breach of peace and repossession allegations against Cox</u>. Defendants contend the amended complaint fails to allege facts showing a breach of the peace and, for that reason, fails to state a viable constitutional claim against Cox arising from the repossession. (Doc. 51 at 7-8.)

The Fourth Amendment protects individuals from "unreasonable … seizures" by the federal government. U.S. CONST. amend. IV. By virtue of its "incorporation" in the Fourteenth Amendment, the right also applies to seizures by state government actors. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). A "seizure" occurs when "there is some meaningful interference with an

individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Additionally, the Fourteenth Amendment protects against deprivations of property by state actors without due process of law. U.S. CONST. amend. XIV, § 1. This right ordinarily requires that an individual be given notice and an opportunity to be heard before a state seizure of property occurs. *See Fuentes v. Shevin,* 407 U.S. 67, 81 (1972). The right protects against "unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party." *Id.*

These constitutional restrictions generally apply only to actions taken under color of state or federal law, and for that reason they do not ordinarily apply to the repossession of a vehicle by a private party. *See Elliott v. Chrysler Fin.*, 149 F. App'x 766, 768 (10th Cir. 2005). As explained in *Marcus v. McCollum,* 394 F.3d 813 (10th Cir. 2004), there is "an essential dichotomy" between government and private action under the Fourteenth Amendment. *Id.* Insofar as police officer involvement with a private party's repossession of property is concerned, case law holds that "officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor." *Id.* at 818. *Marcus* said the totality of the circumstances must be examined in making this distinction. It identified a number of actions indicative of state action, such as an officer telling a debtor "don't interfere with this repossession" or "you know you're not the rightful owner," telling the debtor the seizure is legal, telling the debtor to stop interfering or he will go to jail, or the fact that an officer arrived with the repossessor. *Id.* at 819. Additional factors indicative of state action include intervening at more than one step, failing to depart before completion of the repossession, and unreasonably recognizing the documentation of one party over another. *Id.* "[T]he overarching lesson of case

10

law is that officers may act to diffuse a volatile situation, but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." *Id.*

Most states (including Kansas) have adopted UCC provisions allowing secured creditors to repossess property from a defaulting debtor without a judicial order if certain conditions are met.  One of those conditions allows the creditor to take possession "if it proceeds without a breach of the peace."  K.S.A. 84-9-609(a)(1) & (b)(2).  What constitutes a breach of the peace depends upon state law.  *Cf. Marcus,* 394 F.3d at 820 (examining Oklahoma law).  *Marcus* indicated that if there is a breach of the peace, and the repossession is thereby unlawful, an officer who aids the repossession can be liable because "[i]t stands to reason that police should not weigh in on the side of the repossessor and assist an illegal repossession."  *Id.  Marcus* advised that officers "could direct both parties to seek a judicial determination" in order to diffuse a volatile situation, but they should avoid deciding who is entitled to possession in a "curbside courtroom."  *Id.*

Taking the allegations in the amended complaint as true, Plaintiffs have stated a plausible claim for relief against Defendant Cox under the foregoing rule.  The amended complaint adequately alleges that Cox affirmatively intervened on the side of Triple T/Ryburn and aided them in the repossession of the vehicle in the absence of any judicial order.  Cox allegedly arrived with the repossessor; arranged for a backup officer to be present; entered the premises with the repossessor while McLinn was still inside a building on the property; ignored McLinn's demands that he and the repossessor leave his property; told McLinn he had to allow the repossession to proceed;  physically imposed himself between McLinn and the F350; and remained on the premises until the repossession was complete.  These allegations are sufficient to show state action regardless of whether Cox also repeatedly tapped or touched his gun during the encounter, as

Plaintiffs allege.  *Cf. Marcus*, 394 F.3d at 820 ("officers … may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance.")

In view of the fact that due process generally requires notice and a right to be heard before a state can deprive a person of property, Cox's assistance appears sufficient, without more, to state a claim for unlawful deprivation of property without due process.  *See Hyman v. Capital One Auto Finance,* 306 F. Supp. 3d 756, 770 (W.D. Penn. 2018) (plaintiff stated due process claim where officer's assistance in repossession caused taking of property without notice or opportunity to be heard).  It also might support a Fourth Amendment claim.  *Cf. Soldal v. Cook Cty. Ill.,* 506 U.S. 56, 71 (1992) (plaintiff stated claim for unreasonable seizure under the Fourth Amendment where officers assisted repossessor of mobile home who acted without court order).  At any rate, as discussed below, Plaintiffs have plausibly alleged that there was a breach of the peace, such that a factfinder could conclude the repossession was unlawful and lacking in due process for that reason.

The leading Kansas case on breach of the peace is *Benschoter v. First Nat'l Bank of Lawrence,* 218 Kan. 144, 542 P.2d 1042 (1975), where a creditor was told by a defaulting debtor that it could "come on out and get" the collateral.  When the creditor arrived, the debtor was not at home, and the creditor obtained the collateral by asking the debtor's 17-year old son to open a gate.  The Kansas Supreme Court rejected an argument that this was a breach of the peace through "stealth," finding a debtor's lack of knowledge of the repossession does not make a repossession unlawful.  *Benschoter,* 750 P.2d at 1050.  The court applied a test for breach of the peace that examined "whether there was entry by the creditor upon the debtor's premises" and "whether the debtor or one acting on his behalf consented to the entry and repossession."  *Id.* (citing J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* at 966-75 (West 1972)).  A subsequent case, which also cited the White & Summers' consent test, made clear that forced

entry of a building is a breach of the peace. *Riley State Bank of Riley v. Spillman,* 242 Kan. 696, 705, 750 P.2d 1024, 1030 (1988).

In another case, the Kansas Court of Appeals found no breach of the peace where a creditor successfully repossessed a car from a debtor's driveway at 2:00 a.m. Although the debtor had previously threatened to use a firearm if the creditor tried to take the car, a month after that threat the creditor was able to take the car before the debtor realized what had happened. *Wade v. Ford Motor Credit Co.,* 8 Kan. App. 2d 737, 739, 668 P.2d 183, 185, *rev. denied,* 234 Kan. 1078 (1983). In finding there was no breach of the peace, the court downplayed the issue of consent – noting a debtor's consent was not required for a lawful repossession – and cited several cases examining whether there was a confrontation between the creditor and debtor at the time of repossession. *See id.*, 668 P.2d at 187-189. The court stated that a breach of the peace "may be caused by an act likely to produce violence," but noted the repossession in that case was accomplished without incident and with the debtor "totally unaware of the repossession until [the creditor] had successfully left the premises with the car." *Id.*, 668 P.2d at 189.

The court concludes the allegations in the amended complaint plausibly allege a breach of the peace under Kansas law. The amended complaint describes a confrontation between McLinn, Cox, and Triple T/Ryburn in which the latter two entered upon Plaintiffs' property without his consent and after Ryburn had been told to stay off the property. McLinn confronted the individuals when he discovered them on the property and demanded they leave; Cox and Ryburn ignored McLinn's demands that they cease the repossession and leave his property; McLinn was "agitated and yelling" these demands; Cox instructed McLinn to allow the repossession to proceed; Cox physically interposed himself between McLinn and the truck when McLinn attempted to retrieve personal items; Cox stopped McLinn and demanded that he confirm he was not going to get a

weapon; Cox touched or tapped his firearm during the tense exchange; and McLinn "continued to protest" but Cox ignored his protests.  In sum, the repossessor and the officer refused to leave private property when instructed to do so by the tenant in possession; there was yelling, continued protests, and physical intimidation between the parties involved, there was a directive by a law enforcement officer to allow the repossession to proceed; and there were concerns about the confrontation leading to the use of firearms.  Plaintiffs have plausibly alleged that Cox improperly intervened and assisted an unlawful repossession involving a breach of the peace under Kansas law.  *Cf.* K.S.A. 84-9-609, UCC Comment (3) ("This section does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer."). *See also* L. Anderson U.C.C. § 9-609:13 [Rev] (3d. ed.) ("a repossessing secured party may not use a law enforcement officer in its effort to repossess the collateral without judicial process. The debtor should not be forced to defy a police officer in order to assert its legal right to require a judicial repossession."); 4 White, Summers, & Hillman, Uniform Commercial Code § 34:18 (6th ed.) ("The debtor's opposition, however slight and even if merely oral, normally makes any entry or seizure a breach of the peace. We believe this is sound because the law should not make a debtor physically confront a repossessor in order to sustain a claim of breach of the peace.") (footnote omitted); *Darren Trucking Co. v. Paccar Fin. Corp.*, No. 18-3936-GJH, 2019 WL 3945103, *2 (D. Md. Aug. 20, 2019) ("the weight of state court authority holds that a repossession despite 'unequivocal oral protest of the defaulting debtor' constitutes a breach of the peace.")

    2.  <u>Count I - Deputy Cox – qualified immunity</u>.  Defendants argue "[i]t is not clear at all that Deputy Cox breached the peace, which means that it is also not clearly established that Deputy Cox's conduct was unconstitutional."  (Doc. 51 at 14.)  Although this presents a close question,

the court concludes Cox is not entitled to qualified immunity under the allegations in the amended complaint.

The law in the Tenth Circuit was clearly established at the time of the incident that an officer at a private repossession may act to keep the peace, but "they cross the line if they affirmatively intervene to aid the repossessor." *Marcus,* 394 F.3d at 818. *See also Evers v. Bd. of Comm'rs of Torrance Cty.*, 2008 WL 11451364, *14 (D. N.M. Sept. 30, 2008) ("The law was unquestionably clear in March, 2004, that a police officer's assistance in a private party's seizure of property violates the Fourth Amendment.")  Applying this rule, *Marcus* denied qualified immunity to officers who "assumed, without good evidence, that [the repossessor] had a repossessory right to the [vehicle] and, through physical action and verbal threats, dissuaded plaintiffs from continuing their resistance to the repossession." *Marcus,* 394 F.3d at 824.  In *Price-Cornelison v. Brooks,* 524 F.3d 1103, 1118 (10th Cir. 2008), the Tenth Circuit denied qualified immunity to a sheriff who, confronted with a complainant's allegation that her former domestic partner was improperly removing property from her home, told the complainant the partner could remove whatever property she wanted (because of community property laws) and threatened to arrest the complainant if she returned to her home.  The Tenth Circuit concluded, based on *Marcus,* that the sheriff was "on notice … that he could be liable for assisting a private party's unlawful seizure of property at the time he threatened to arrest [the complainant]." *Id.*

Cox argues that the vague contours of a "breach of the peace" means he is entitled to qualified immunity.  It is true that the term lacks a clear or easily applied definition.  *See Riley State Bank of Riley v. Spillman,* 242 Kan. 696, 704, 750 P.2d 1024, 1030 (1988) ("The drafters of the UCC did not define the term 'breach of the peace,' purposefully leaving such definition to the courts…. There has been little caselaw in Kansas on what constitutes a breach of the peace; our

definition of the term is thus largely incomplete.")   But *Marcus* found the law was clearly established and denied qualified immunity under similar circumstances, focusing on the officers' unfounded assumption that the repossessor was entitled to possession of the vehicle and their use of police authority to aid the repossessor.   *See Marcus,* 394 F.3d at 824 (citing *Abbott v. Latshaw,* 164 F.3d 141, 149 (3d Cir. 1998) for the proposition that "reasonable police officers should know from established precedent 'that their role is not to be participants in property deprivations without notice and an opportunity to be heard.'")   This case is materially indistinguishable from *Marcus.* Cox argues that differences between the Oklahoma UCC at issue in *Marcus* and the Kansas UCC applicable here means the law governing Cox's conduct was not clearly established.   (Doc. 51 at 10-11.)   But the Kansas UCC, like the Oklahoma UCC, "does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer." K.S.A. 84-9-609, UCC Comment (3).

Taking Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, they show that Cox, contrary to clearly established law, affirmatively intervened to aid the repossessor and asserted his authority to overcome McLinn's objections, all in the absence of any court order, and thereby allowed Triple T/Ryburn to accomplish an unlawful repossession. Similar to *Marcus*, Cox assumed without a court order that Ryburn had a right to take the F350. Cox prevented McLinn from halting the repossession and deterred him from continuing to object by ignoring his demands to leave the property, by interposing himself physically near McLinn, and by directing McLinn to allow the repossession to proceed.   A reasonable officer in those circumstances would understand that intervening on the side of the repossessor in this manner was contrary to the rule set forth in *Marcus.*

3.  <u>Count I - Sheriff Nickols – individual liability for repossession</u>.  Nickols argues the amended complaint fails to state a claim against him in his personal capacity for the allegedly unlawful repossession.  (Doc. 51 at 15.)    Plaintiffs fail to contest this argument.  (*See* Doc. 73.) The court accordingly grants the motion as uncontested.

4.  <u>Count I - Sheriff Nickols – deprivation of First Amendment rights</u>.    Count I includes allegations that Nickols deprived McLinn of First Amendment rights by threatening to "arrest him for phone harassment for attempting to petition" and by threatening to charge him criminally "if [McLinn] continued to attempt to redress his grievances against them…."  (Doc. 45 at 22, 24.)

Nickols argues, among other things, that the allegations fail to state a viable First Amendment claim because they do not allege that McLinn was unable to petition the County Defendants.  (Doc. 51 at 17-18.)  Additionally, Nickols argues he is entitled to qualified immunity insofar as the claim is asserted against him in his individual capacity because there is no binding precedent indicating his conduct violated the First Amendment.  (*Id.*at 18.)  As discussed below, the court rejects the former argument but agrees with the latter argument, and therefore grants the motion to dismiss the First Amendment claim only insofar as it is asserted against Nickols in his individual capacity.

The First Amendment provides in part that "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances."  U.S. CONST. amend. I.  The First Amendment bars government officials from retaliating against individuals for engaging in protected speech. *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998).  To make out a claim for unlawful retaliation by government officials in response to a plaintiff's exercise of his First Amendment right to petition for a redress of grievances, the plaintiff must show: 1) that he was engaged in constitutionally protected activity; 2) the defendant's actions caused the plaintiff

to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Van Deelen v. Johnson,* 497 F. 3d 1151, 1155-56 (10th Cir. 2007). "Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) (citation omitted).

Nickols argues Plaintiffs have failed to allege an injury sufficient to state a claim because the alleged threat to arrest McLinn "was not realistic" and did not stop McLinn from complaining. (Doc. 75 at 9.)    Assuming a threat to prosecute or arrest must be realistic in order to satisfy the second element of *Van Deelen* (*see Hodgkins v. Peterson,* 355 F.3d 1048, 1056 (7th Cir. 2004) (a realistic threat of arrest is enough to chill First Amendment rights)), Nickols has not shown an entitlement to dismissal on that basis.   At the pleading stage, all well-pleaded facts and the reasonable inferences therefrom are viewed in Plaintiffs' favor.  Nothing in the amended complaint shows the alleged threats to arrest McLinn or to charge him with harassment could not plausibly be considered realistic.  Moreover, the mere fact that McLinn may have continued to complain even after the alleged threats does not preclude a claim for retaliation as a matter of law. *Cf. Smith v. Plati,* 258 F.3d 1167, 1177 (10th Cir. 2001) ("The focus … is upon whether a *person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled.")   (italics in original); *Jiron v. Roth,* ___ F. Supp. 3d ___, 2021 WL 601833, *19 (D. N. M. Feb. 16, 2021) ("The Supreme Court has held that 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation' curtails the freedom of speech just as effectively as an actual sanction.") (citations omitted.)

Nevertheless, Plaintiffs have not shown that Nickols' alleged conduct violated clearly established law. In arguing otherwise, Plaintiffs rely on *Van Deelen* for the premise that "intimidating a citizen with an idle threat" is sufficient to deny qualified immunity, as *Van Deelen* explained that "the right at issue – to petition the government for the redress of tax grievances – has been with us and clearly established since the Sons of Liberty visited Griffin's Wharf in Boston." [i.e., the "Boston tea party"] (Doc. 73 at 26) (quoting *Van Deelen,* 497 F.3d at 1158.) But the amended complaint in this case indicates McLinn complained to Nickols about the repossession since at least August 10, 2018, and that he did so repeatedly over the course of two years by calling the Thomas County Sheriff's Office on the phone. (Doc. 45 at 15-17.) First Amendment rights co-exist with harassment laws that conceivably limit the manner in which citizens can lawfully convey complaints to government officials. *See e.g., United States v. Waggy,* 936 F.3d 1014, 1018-20 (9th Cir. 2019) (discussing cases dealing with intersection between First Amendment rights and harassment laws.) The fact that the right to petition government officials is well established does not suffice to show that Nickols should have known that his conduct in these particular circumstances was unlawful. *See Dist. of Columbia v. Wesby,* 138 S. Ct. 577, 590 (2018) ("The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.") Plaintiffs have not cited case law showing that an official in Nickols' place could not have reasonably believed, even if perhaps mistakenly, that the manner in which McLinn was asserting his complaints – by making repeated phone calls to the Sheriff's Office over the course of two years – made an arrest or a charge of harassment lawful. *Cf. State v. Farmer,* 197 P.3d 904 (Table), 2008 WL 5401338, *4 (Kan. Ct. App. Dec. 19, 2008) (Kansas statute punishes conduct in utilizing the phone with intent to harass, not the use of speech); *State v. Thompson,* 237 Kan. 562, 568, 701 P.2d 694, 699 (1985) (upholding

Kansas telephone harassment law against First Amendment challenge).  Nickols is accordingly entitled to dismissal of the claim against him in his individual capacity on the basis of qualified immunity.

     5.  <u>Count I - against Nickols in his official capacity</u>.  Defendants argue the amended complaint contains only conclusory allegations that official policies or customs of Sheriff Nickols caused a deprivation of Plaintiffs' rights, such that the official capacity claims against Nickols should be dismissed.[3]  (Doc. 51 at 22.)  Plaintiffs respond that this "is a red herring" because Nickols is the final policymaker for the county, such that his actions represent established policies of the sheriff's department.  (Doc. 73 at 26-27.)

     A local government may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or act may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978).  The Tenth Circuit has recognized that:

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them— of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Crittenden v. City of Tahlequah,* 786 F. App'x 795, 800 (10th Cir. 2019) (citing *Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010)).  Kansas law generally vests county sheriffs with

---

[3] Defendants also argue the Thomas County Sheriff's Department should be dismissed as a party because it is not an entity that can be sued under state law.  (Doc. 51 at 19 n.3.)  Plaintiffs did not respond to this argument.  (Doc. 73.)  The court finds the motion to dismiss the Thomas County Sheriff's Department should be granted.  *See Walker v. Douglas Cty. Sheriff's Office,* 2020 WL 5513618, *2 (D. Kan. Sept. 14, 2020) (Douglas County Sheriff's Office is not an entity which may be sued under the laws of Kansas; all suits against a county must be brought against the board of county commissioners).

authority over law enforcement decisions, making sheriffs the final policymakers for the county on law enforcement matters. *See Dechant v. Grayson,* No. 20-2183-HLT, 2021 WL 62380, *3 (D. Kan. Jan. 7, 2021). It is not enough, however, for a § 1983 plaintiff merely to identify conduct attributable to a local government; a plaintiff must also "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown,* 520 U.S. 397, 404 (1997).

Plaintiffs' response argues that three actions by Nickols constitute policies that support *Monell* claims. First, Plaintiffs assert that Nickols' actions "permitting deputies to help private actors ensure successful repossession of others' property without a court order" support a claim. (Doc. 73 at 27.) But the amended complaint fails to allege facts showing the existence of such a policy. It does not allege that Nickols was involved in the repossession of Plaintiffs' truck, and it only vaguely alludes to "other claims based on similar facts being brought against other members of the Thomas County's Sheriff's Department." (Doc. 45 at 21.) Conclusory allegations of unspecified other claims are insufficient to state a plausible claim for relief under *Monell*.[4] Moreover, assuming this claim relies on a theory that Nickols subsequently ratified Cox's actions during the repossession, that would not aid Plaintiffs because any after-the-fact ratification could not have been the cause of the deprivation claimed by Plaintiffs. *See e.g., Feliciano v. City of Cleveland,* 988 F.2d 649, 656 n.6 (6th Cir. 1993) ("even if it were shown that the municipality subsequently ratified the decision, the plaintiffs would then have to prove that the ratification was

---

[4] Also insufficient are the amended complaint's conclusory allegations of an official policy by Nickols "of inadequately training and instructing deputies on the proper process for repossessing property…." (Doc. 45 at 21.) That allegation is unsupported by any specific facts except Cox's repossession of the F350, which the court concludes is not sufficient to state a plausible claim. *See City of Canton v. Harris,* 489 U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.")

a 'moving force' in causing the constitutional violation.") Second, Plaintiffs assert a policy based on Nickols' actions in "retaliating against citizens who complain." (Doc. 73 at 27.) Again, no other instances of retaliation are identified in the amended complaint. But insofar as the amended complaint alleges that Nickols himself threatened to arrest or to charge McLinn, such a decision by the county's final policymaker on law enforcement matters could qualify as an official policy of the county for purposes of a *Monell* claim. As to that claim, the court rejects Defendants' argument that Plaintiffs have failed to plausibly allege a policy or facts showing the policy caused a constitutional deprivation. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986) ("If the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.") Finally, Plaintiffs assert a *Monell* claim based on Nickols' actions in "lying to hide an officer's unconstitutional actions." (Doc. 73 at 27.) The court concludes this assertion fails to support any *Monell* claim. Even assuming the truth of the allegation that Nickols lied when he said Cox had a court order authorizing the repossession, Plaintiffs fail to articulate how such an action caused them to be deprived of a constitutional right. Accordingly, Nickols' motion to dismiss the official capacity claims against him is granted in part and denied in part.

6. <u>State law claims – notice-of-claim</u>. The Thomas County Defendants argue the state law claims should be dismissed for lack of jurisdiction because Plaintiffs did not provide notice of the claims as required by K.S.A. 12-105b(d). (Doc. 51.) In response, Plaintiffs argue they substantially complied with the statute "by calling the Sheriff's Department to file a complaint." (Doc. 73 at 27.) The court rejects Plaintiffs' substantial compliance argument and finds that the state law claims must be dismissed for failure to satisfy K.S.A. 12-105b(d).

Section 12-105b(d) provides in part that any person having a claim against a municipality or an employee of a municipality which could give rise to a claim under the Kansas Tort Claims Act (KTCA) must file the notice required by that section before commencing an action in court. The term "municipality" includes a county.  K.S.A. 12-105a(a).  The notice "shall be filed with the clerk or governing body of the municipality" and shall contain specified information, including a statement of the amount of damages sought.  K.S.A. 12-105b(d).  A party's "substantial compliance" with the statutory requirements "shall constitute a valid filing of a claim." *Id.*  "It is … well-established that compliance with the requirements of § 12–105b is mandatory under Kansas law." *Lara v. Unified Sch. Dist. #501*, 350 F. App'x 280, 284 (10th Cir. 2009) (citing *Myers v. Bd. of County Comm'rs of Jackson County*, 280 Kan. 869, 127 P.3d 319, 325 (2006)).  "Compliance with …. 12-105b(d) is required before a court has subject matter jurisdiction over a tort claim against a municipality."  *Whaley,* 343 P.3d at 67 (2014).

In *Myers*, the Kansas Supreme Court rejected an argument that sending a claim letter to a county counselor constituted substantial compliance under section 12-105b(d):

> If the statutory requirements are not met, the court cannot acquire jurisdiction over the municipality.  Allowing a claimant to serve notice on a county counselor or anyone else who is not the 'clerk or governing body of the municipality' as specified in [the statute] would violate the clear language in [K.S.A. 12-105b].  The 'substantial compliance' language does not authorize the court to create new methods of serving notice of claim.

*Myers,* 127 P.3d at 325.  Under this rule, Plaintiffs' purported attempts to serve notice of his claims upon the Thomas County Sheriff did not constitute substantial compliance.  For a county, the term "governing body" means the board of county commissioners.  K.S.A. 12-105a(b).  Plaintiffs do not allege that they made any attempt to timely serve notice of their claims on the board of county

commissioners, nor do they allege facts showing they could not reasonably have done so.[5]   The court thus finds it lacks subject matter jurisdiction over the state law claims against the Thomas County Defendants.

## B.  Defendants Ryburn/Triple T. Towing

1.  <u>Count I - Section 1983 claim against Ryburn/Triple T - repossession</u>.  Defendants argue the amended complaint fails to state a claim against Ryburn[6] under section 1983 because Ryburn was not a state actor at the time of the repossession.  Defendants additionally argue McLinn lacks standing to assert a § 1983 claim because, according to Defendants, Outlaw Towing rather than McLinn owned the F350.  (Doc. 47 at 1-2.)

"[T]o hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." *Counce v. Wolting*, 760 F. App'x 575, 580 (10th Cir. 2019) (quoting *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) (internal quotation marks omitted)).  The individual must be a "willful participant in joint action with the State or its agents."  *Beedle v. Wilson,* 422 F.3d 1059, 1071 (10th Cir. 2005).

The court rejects the contention that Ryburn's status as a private individual means he cannot be liable on the § 1983 claim.  Plaintiffs allege that Cox came to the scene at the request of Ryburn; that the two coordinated their arrival; that they discussed a plan for the repossession; that

---

[5] Plaintiffs' brief intimates that Nickols' alleged threats to arrest or charge McLinn with phone harassment somehow excused Plaintiffs' failure to comply with K.S.A. 12-105b(d).  (Doc. 73 at 27.)  But Plaintiffs allege nothing to show that they refrained from sending a written notice of claim to the board of county commissioners because they feared doing so might expose them to an arrest or a criminal charge.

[6] The amended complaint alleges that Triple T Towing is a sole proprietorship operated by Ryburn, and that the actions of each of these Defendants is the action of the other.  (Doc. 45 at 4-5.)  For purposes of the instant motion, the parties have treated the two collectively and the court has done so as well.  For purposes of this ruling, references to Ryburn thus apply equally to Triple T Towing.

Cox aided Ryburn by positioning himself near McLinn, by ignoring McLinn's demands to leave the property, and by instructing McLinn that he had to let the repossession go through; and that Cox remained on the scene near McLinn until the repossession was complete.  These allegations are sufficient to plausibly show joint engagement between Ryburn and Cox and/or that Ryburn obtained significant aid from Cox, in what was essentially a joint venture to seize the vehicle without a court order.  Plaintiffs have adequately alleged that Ryburn acted under color of state law.  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) ("[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents.")

With respect to Defendants' argument that McLinn lacks standing to assert a § 1983 claim because he did not own the F350, the court rejects this argument, at least for now, based on the allegations in the amended complaint.  According to the amended complaint, "Plaintiffs purchased [the] … Ford F350…."  (Doc. 45 at 6.)  Assuming that allegation is true, McLinn has standing to assert a claim that he had an ownership interest and was unlawfully deprived of the F350.

2.  <u>Jurisdiction over state law claims</u>.  Defendants argue that if the court dismisses the § 1983 claim, it should dismiss the state law claims for lack of jurisdiction.  (Doc. 47 at 9.)  The court has denied the motions to dismiss the § 1983 claim, however, and finds supplemental jurisdiction over the state law claims is properly exercised.  28 U.S.C. § 1367(a) (where federal court has original jurisdiction over one claim, it has supplemental jurisdiction over other claims that are part of the same controversy).

3.  <u>Trespass and conversion</u>.  Defendants argue Ryburn did not commit a trespass or conversion because he was authorized to enter the property to repossess the F350 pursuant to K.S.A. 84-9-609.  (Doc. 47 at 11.)  Defendants also contend there was no trespass or conversion

because Plaintiffs consented to the repossession through the loan agreement. (*Id.* at 13.) The court rejects these arguments.

Defendants' contention that K.S.A. 84-9-609 authorized the entry and repossession is premised on the assumption that there was no breach of the peace in connection with the repossession. (Doc. 47 at 12-13.) For reasons previously stated, however, the court finds Plaintiffs have sufficiently alleged a breach of the peace. Moreover, Kansas law makes clear that K.S.A. 84-9-609 "does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer." *Id.*, UCC Comment (3). That assistance is precisely what Plaintiffs have alleged in this case.

Plaintiffs' purported consent in the security agreement likewise does not preclude a claim for trespass or conversion. As Plaintiffs point out, Kansas law provides that a debtor may not waive the provisions of K.S.A. 84-9-609 "to the extent that it imposes upon a secured party that takes possession of collateral without judicial process the duty to do so without a breach of the peace." K.S.A. 84-9-602(6). Moreover, even assuming the loan agreement included some form of consent, any such consent was revoked by McLinn when he demanded that Ryburn leave the F350 and get off the property. *See e.g., James v. Ford Motor Credit Co*., 842 F. Supp. 1202, 1208 (D. Minn. 1994), aff'd, 47 F.3d 961 (8th Cir. 1995) ("It is reasonably clear that Minnesota follows the majority view of U.C.C. § 9–503: when debtors specifically object to repossession, they revoke any implied right previously granted to the creditors to enter the debtor's property without consent.")

4. <u>Improper repossession under the UCC</u>. Count IV alleges that the repossession was unlawful under the requirements of K.S.A. 84-9-609, and that Triple T/Ryburn "as the agent of FSB, [is] responsible for the unauthorized repossession." (Doc. 45 at 31.) Defendants argue the

UCC provisions do not place any duty on Triple T/Ryburn because they are not creditors.  (Doc. 47 at 14.)

Plaintiffs cite no authority showing a right to damages against Triple T/Ryburn for any violation of the UCC.  Instead, Plaintiffs simply argue the court "should not give countenance" to Defendants' arguments. (Doc. 58 at 24.)  But Plaintiffs have identified no provision of the Kansas UCC or Kansas law authorizing a claim for damages against the agent of a secured creditor in these circumstances.  The provision allegedly violated, K.S.A. 84-9-609, provides that "*a secured party* … may proceed without judicial process, if it proceeds without a breach of the peace." (emphasis added.)  Similarly, insofar as Article 9 invokes a duty of care with respect to collateral, it states that "*a secured party* shall use reasonable care" for collateral in its possession.  K.S.A. 84-9-207(a) (emphasis added).  The Article 9 provision authorizing damages states in part that "a person is liable for damages in the amount of any loss caused by a failure to comply with this article."  K.S.A. 84-9-625.  Taken together, the provisions show there is a duty on the part of "the secured party" to proceed without a breach of the peace and that the secured party is liable in damages in the event it "fail[s] to comply with this article." Because Triple T/Ryburn is not a secured party, the motion to dismiss this claim against them is granted.

5. <u>Breach of contract</u>.  Defendants next argue the amended complaint fails to state a valid claim for breach of contract against Ryburn/Triple T because they were not a party to any contract with Plaintiffs.  (Doc. 47 at 15.)  Plaintiffs' response again invokes the same UCC provisions cited above.  (Doc. 58 at 25.)  Plaintiffs also assert arguments that appear to have nothing to do with the existing contract between FSB and Plaintiffs.  *See id.* ("The fact that Triple T held itself out as a professional towing enterprise seems particularly inconsistent with the notion it should not have been expected to complete its performance in a workmanlike and legal manner.")

A claim for breach of contract in Kansas requires, among other things, a showing of "the existence of a contract between the parties." *Stechschulte v. Jennings,* 297 Kan. 2, 298 P.3d 1083 (2013). Plaintiffs have not alleged there was any contract between them and Ryburn/Triple T. The motion to dismiss the breach of contract claim against Ryburn/Triple T is granted.

6. <u>Negligent and intentional infliction of emotional distress</u>. Defendants argue Count VI fails to state a claim for intentional or negligent infliction of emotional distress because it does not allege the type of "extreme and outrageous" facts or the "extreme and severe" emotional distress required for a claim in Kansas. (Doc. 47 at 16.) They additionally contend the allegations fail to state a claim for negligent infliction of emotional distress because Plaintiffs fail to allege a physical injury associated with the distress. (*Id.* at 17.) The court agrees and concludes the claim must be dismissed.

A claim for intentional infliction of emotional distress – or "outrage" – under Kansas law requires proof of four elements: (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. *Valadez v. Emmis Commc'ns*, 290 Kan. 472, 476, 229 P.3d 389 (2010). There are two threshold requirements that must be met: (1) whether "[D]efendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery," and (2) whether "the emotional distress suffered by Plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Id.* at 477, 229 P.3d 389. Kansas also permits recovery for the negligent infliction of emotional distress, but courts have "long held that a plaintiff cannot recover for emotional distress caused by the defendant's negligence unless that emotional distress is

accompanied by or results in physical injury to the plaintiff." *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 628, 349 P.3d 1283, 1285 (2015) (citing *Hoard v. Shawnee Mission Med. Ctr.*, 233 Kan. 267, 274, 662 P.2d 1214 (1983)). "The qualifying physical injury 'must directly result from the emotional distress allegedly caused by the defendant's negligence and must appear within a short span of time after the emotional disturbance.'" *Id.* (citing *Hoard*, 233 Kan at 279, 662 P.2d at 1222).

Plaintiffs rely principally on the allegations of an unauthorized and unlawful repossession to support the claims for infliction of emotional distress. (Doc. 45 at 36.) Additionally, they allege that Ryburn "posted at least one photograph of [the F350] on … SnapChat," "told several members of the community about the repossession" and about McLinn's payment history, and "shout[ed] names at McLinn on a public street" after the repossession. (Doc. 45 at 18-19.) These allegations are insufficient under Kansas law to support a claim for intentional or negligent infliction of emotional distress. "In order to provide a sufficient basis … conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Valadez*, 229 P.3d at 394 (citation omitted.) "Conduct that rises to the level of tortious outrage must transcend a certain amount of criticism, rough language, and occasional acts and words that are inconsiderate and unkind. The law will not intervene where someone's feelings merely are hurt." *Id.* Defendants' alleged actions, even if improper, do not come close to the level of "extreme and outrageous" conduct that Kansas courts find necessary to support a claim. *See e.g., Neufeldt v. L.R. Foy Const. Co. Inc.*, 236 Kan 664, 668, 693 P.2d 1194, 1198 (1985) (knowingly and falsely telling a woman who recently suffered a miscarriage that the sheriff was coming to get her husband over a bad check was not sufficient); *W-V Enter., Inc. v. Fed. Sav. & Loan Ins. Corp.*, 234 Kan 354, 673 P.2d 1112 (1983) (although defendant's conduct was "fraudulent and deceptive" it did

not meet the definition of outrageous).  Additionally, Plaintiffs' allegations fail to show a physical injury directly resulting from the emotional distress within a short time after the emotional disturbance.  Plaintiffs merely allege that distress caused by Defendants "has and continues to exacerbate a back injury McLinn sustained when a debtor fractured one of his vertebrae during a repossession."  (Doc. 45 at 19.)

## V.  Conclusion

The Thomas County Defendants' (Cox, Nickols, Thomas County Sheriff's Department, and Thomas County Board of County Commissioners) motion to dismiss (Doc. 50) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED insofar as Count I alleges a § 1983 claim against Nickols for repossession of the F350, insofar as Count I alleges a claim against Nickols in his official capacity for the repossession, and insofar as Count I asserts a First Amendment retaliation claim against Nickols in his individual capacity; such claims are DISMISSED.  The motion is also GRANTED as to the state law claims against these Defendants; Counts II, III, IV, V, and VI against the Thomas County Defendants are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction under K.S.A. 12-105b(d).  The Thomas County Sheriff's Department is DISMISSED as a party. The motion is otherwise DENIED.

Defendants' Ryburn and Triple T Towing's motion to dismiss (Doc. 46) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to Count IV (improper repossession under the UCC), Count V (breach of contract), and Count VI (negligent and intentional infliction of emotional distress); the foregoing claims against Rybrun and Triple T Towing are DISMISSED. The motion is DENIED as to Count 1 (§ 1983 claim), Count II (trespass), Count III (conversion) against Ryburn and Triple T Towing, and as to these Defendants' request to dismiss for lack of jurisdiction.

FSB's motion to dismiss (Doc. 52) is DENIED without prejudice to reassertion based on the parties' notice of settlement.

Plaintiffs' motions for hearing (Doc. 71) and to file a surreply (Doc. 77) are DENIED.

IT IS SO ORDERED this 26th day of April, 2021.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

31